[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Jennie D. Round, age 49, whose maiden name was Jennie Dynesius, and the defendant, Byron J. Round, age 50 were married at Chattanooga, Tennessee on June 24, 1967. There are three children issue of the marriage, Jeffrey, age 21, Kristin, age 20 and Kirk Stuart, a minor, born November 22, 1979. The matter is before the court following a limited contested trial for dissolution of the marriage.
At the time the parties met, the defendant was attending medical school to become a dentist. After the marriage, the plaintiff who had two years of college obtained full time employment to support the couple. She also continued to work while her husband went on to further education to qualify as an orthodontist.
After the defendant opened his practice, the plaintiff CT Page 2582 assisted him in his office, painting and decorating, and lawn care. In addition she took care of the children and household.
Initially, the parties resided in Torrington, later moving to Litchfield where they acquired a substantial home listed in the wife's name. This property has an appraised value of $1,200,000 to $1,300,000 but a more realistic figure is closer to $1,000,000. This property is subject to a mortgage of approximately $360,000.00.
The defendant owns an office at 332 Bantam Road in Litchfield valued at $225,000.00 and another office at 227 Main Street, Torrington valued at $238,000.00. These properties are free and clear of any mortgage.
The plaintiff has minimal income of $41.00 per week and claimed expenses of $1,773.25 per week. Aside from the real estate located at 42 Old South Road, Litchfield, Mrs. Round has a 1993 Saab automobile, home furnishings valued at $100,000.00 and an IRA account of $23,783.60.
The defendant has filed an affidavit showing no income which the court finds to be totally false. The defendants' average income for the years 1989 to 1993 is in the area of $230,000.00. (See Appendix A attached). Aside from his two offices valued at $463,000.00, Dr. Round has a 1993 Ford Explorer, an IRA of $68,376.00, a profit sharing fund of $420,341.00, and office equipment and cash of $132,100.00. His practice is valued at $310,100.00. Likewise, he has a life insurance policy with a face value of $350,000.00. The parties also have two trusts to provide for the education of Kristen and Kirk.
The marriage was a stable one until December 1991. Commencing December 22, 1991, the defendant carried on an illicit affair with a patient. This relationship continued until March 1992 and included sexual encounters, gifts of jewelry and cards. The court finds that although the patient may have been the instigator, Dr. Round was a willing participant. It is clear that this affair is the predominate cause of the breakdown.
There is also evidence that the plaintiff developed a close personal relationship with a male neighbor somewhat senior in age. No evidence was offered to indicate that these individuals engaged in any sexual relationship although the plaintiff did spend more time than would be considered reasonable in a stable CT Page 2583 marriage.
Two of the parties children are adults. Their son Kirk, age 16, lives in Litchfield and attends Litchfield High School where he should continue. There appears to be a close relationship between the defendant and his son. Under the circumstances joint custody is indicated.
As stated previously, the defendant has filed a false affidavit showing no income. The court finds, however, that his average income between 1989 to 1993 is over $230,000.00 per year. Dr. Round has demonstrated a substantial earning capacity and it is only through improper accounting practices has he been able to show a reduced annual income. (See Appendix B). Johnson v.Johnson, 185 Conn. 573, 576.
As stated in Rubin v. Rubin, 204 Conn. 224 at 233:
 General Statutes § 46b-82, which currently authorizes the court to order alimony, neither defines the term "alimony" nor restricts the scope of the award. In conferring discretion upon the court to determine "whether alimony shall be awarded, and the duration and amount of the award," § 46b-82 directs the court to consider "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." We have often stated that the type and amount of alimony awarded under a decree dissolving a marriage is within the sound discretion of the trial court. Tworek v. Tworek, 170 Conn. 259, 260, 365 A.2d 392 (1976); Krieble v. Krieble, 168 Conn. 7, 7, 357 A.2d 475 (1975).
Rubin, 204 Conn. at 233.
The plaintiff lists weekly expenses as follows:
 Mortgage $675.00 Taxes 341.00 Homeowner's ins. 29.00 Fuel Oil 125.00 Electricity 75.00 Water 23.00 CT Page 2584 Basic Telephone 26.00 Trash Collection 5.00 Cable Television 9.00 Household maintenance/repairs 75.00 Auto ins. 21.00 Auto taxes 7.00 ------------ Total weekly expenses $1,411.00
In this case, the court finds that an allowance to prosecute is justified based upon the respective financial abilities of the parties and the statutory criteria. Kozim v. Kozim,181 Conn. 492, 500; Holley v. Holley, 194 Conn. 25, 34.
Based upon the evidence and the criteria set forth in the general statutes, the court finds that the marriage has broken down irretrievably and the following orders should enter.
1. A decree of dissolution dissolving the marriage.
2. Alimony in the amount of $8,000.00 per month payable $4,000.00 on or before the fifth day of each month and $4,000.00 payable on or before the twentieth day of each month, until the death or remarriage of the plaintiff. The defendant shall name the plaintiff irrevocable beneficiary on a life insurance policy with a face value of $250,000.00 so long as he is obligated to pay alimony.
3. Joint custody of the minor child, Kirk Stuart Round subject to reasonable, liberal and flexible visitation to the defendant which shall include Friday after school to Monday morning in time for school attendance. In addition, the parties shall split the summer vacation and other school vacations. Holidays shall be alternated with Christmas Eve to 10:00 a.m. Christmas Day to be considered one day and the balance of Christmas Day the other.
4. The defendant shall pay child support in the amount of $250.00 per week subject to the provisions that support shall be suspended for any week during the summer when the child is residing with the defendant.
5. a. The defendant shall continue to provide the existing or comparable medical and dental insurance coverage for the benefit of the parties' minor child until said child attains the age of 18 years. The defendant shall further pay all unreimbursed CT Page 2585 medical, dental, orthodontic, opthomological, pharmaceutical, psychological and psychiatric expenses incurred for the benefit of said minor child.
b. The provisions of Conn. Gen. Stat. § 46b-84(c), as amended, shall be applicable. All insurance reimbursement checks shall be made payable or endorsed over to the appropriate hospital, medical or dental services provided or to the party who has paid the expense involved.
6. The defendant shall name the parties' minor child as an irrevocable beneficiary on a life insurance policy with a face value of not less than $100,000 until said child attains the age of 18 years.
7. The plaintiff shall be exclusively entitled to the real property located at 42 Old South Road, Litchfield, Connecticut and shall hold the defendant harmless from any and all obligations connected therewith.
8. The defendant shall be exclusively entitled to the real property located at 227 Main Street, Torrington, Connecticut and shall assume and hold the plaintiff harmless from any and all obligations associated therewith.
9. The plaintiff shall transfer to the defendant all of her right, title and interest in and to the parties' jointly-owned real property located on Route 202, Litchfield, Connecticut and known as 338 Bantam Road. The defendant shall assume and hold the plaintiff harmless from any and all obligations associated therewith.
10. The defendant shall be exclusively entitled to his dental practice and shall assume and hold the plaintiff harmless from any and all obligations associated therewith.
11. Each party shall assume and hold the other harmless from all Federal, State and Social Security or self-employment tax liability attributable to his or her income during the term of the marriage.
12. The plaintiff shall be exclusively entitled to her Equitable Individual Retirement Account with an approximate value of $23,784. CT Page 2586
13. The defendant shall effect a non-taxable rollover to the plaintiff of $252,205.00 of his interest in and to the Byron J. Round, D.D.S., P.C. Profit Sharing Plan with a current value of approximately $420,341.00.
14. Each party shall be exclusively entitled to his and her respective bank and stock accounts.
15. The plaintiff shall be exclusively entitled to the 1993 Saab automobile and shall assume and hold the defendant harmless from any and all obligations associated therewith.
16. The defendant shall be exclusively entitled to the 1989 Toyota pickup and the 1993 Ford Explorer and shall assume and hold the plaintiff harmless from any and all obligations associated therewith.
17. The parties shall equally divide their furniture, furnishings and personal property. If the parties are unable to reach an agreement with regard to the division of said personal property, the issue shall be referred to the Family Relations office of the Litchfield Superior Court for mediation. If no agreement is reached as a result of the mediation, the matter shall be referred to the court for hearing and determination.
18. The defendant shall continue to provide at his sole expense the existing or comparable medical insurance coverage for the benefit of the plaintiff consistent with her COBRA rights for a period of three years from the date of the dissolution of the marriage of the parties.
19. The parties shall continue to maintain all of the children's bank accounts for their college educations.
20. The plaintiff shall assume and hold the defendant harmless from the liabilities set forth on her financial affidavit except for the Charlotte Hungerford Hospital liability which the defendant shall assume and hold the plaintiff harmless from.
21. The defendant shall pay to the plaintiff the sum of $1,500.00 within three weeks representing the pendente lite alimony arrearage.
22. The parties shall cooperate in filing a joint tax return for the year 1994. Any refunds which may be due as a result of CT Page 2587 any joint federal or state tax returns filed by the parties shall be the property of the defendant who shall also be responsible for any deficiency.
23. The defendant shall pay to the plaintiff the sum of $10,000.00 as an allowance to prosecute by turning over the CD held by the plaintiff's counsel.
24. The defendant shall be entitled to claim the minor child as a dependency exemption. The plaintiff shall execute such documents as are necessary to achieve the defendant taking such exemption.
The financial orders entered here will result in a fair and equitable distribution of the marital assets as follows:
 PLAINTIFF DEFENDANT
 --------- ---------
42 Old South Road 227 Main Street
Litchfield* $578,900 Torrington $238,000
 Route 202
 Litchfield 225,000
 Dental Practice 132,100
Plaintiff's IRA 23,784 Defendant's IRA 68,376
1993 Saab 15,600 1993 Ford Explorer 15,000
Personal Property** 50,000 Personal Property** 50,000
Defendant's Profit Defendant's Profit
Sharing Plan (60%) 252,205 Sharing Plan (40%)
168,136 Bank Accounts 143 Bank Accounts 544
Cert. of Dep. 10,000 ------
 --------
Total $930,632 $897,156
 TOTAL ASSETS $1,827,788
 Plaintiff's Share 51%
 Defendant's Share 49%
*Based upon Anticipated Sales Price $1,000,000.00
Less: Mortgage -364,000.00
 Real estate commission — 50,000.00
 State conveyance tax — 5,000.00
 Local conveyance tax — 1,100.00
CT Page 2588
 Attorney's fee — 1,000.00
 -------------
Net Proceeds $578,900.00

**Assuming without deciding that the parties agree to a 50-50 split of personal property in the marital residence upon its sale.
Judgment may enter dissolving the marriage.
PICKETT, J.
APPENDIX A
BYRON J. ROUND, DDS PC Adjusted Income Statement ---------------------------------------------------------------------------- Years Ended November 30 1987 1988 1989 ---------------------------------------------------------------------------- 1 REVENUES $386,968 100.0% $408,856 100.0% $429,069 100.0%
2 Operating Expense 187,353 48.4% 200,300 49.0% 169,583 39.5% 3 Depreciation 8,140 2.1% 8,466 2.1% 8,804 2.1% -------- ------ -------- ------ -------- ------ 4 Total Operating Expense 195,493 50.5% 208,765 51.1% 178,387 41.6%
5 OPERATING INCOME 191,475 49.5% 200,090 48.9% 250,682 58.4%
6 Other Income/Expense 3,423 0.9% 5,117 1.3% 4,635 1.1% -------- ------ -------- ------ -------- ------ 7 PRE-TAX INCOME 194,898 50.4% 205,208 50.2% 255,318 59.5% ======== ====== ======== ====== ======== ======
---------------------------------------------------------------------------- Years Ended November 30 1990 1991 1992 ---------------------------------------------------------------------------- 1 REVENUES $451,351 100.0% $393,915 100.0% $367,900 100.0%
2 Operating Expense 174,368 38.6% 172,807 43.9% 168,676 45.8% 3 Depreciation 9,157 2.0% 9,523 2.4% 9,904 2.7% -------- ------ -------- ------ -------- ------ 4 Total Operating Expense 183,525 40.7% 182,330 46.3% 178,580 48.5%
5 OPERATING INCOME 267,826 59.3% 211,585 53.7% 189,320 51.5% CT Page 2589 6 Other Income/Expense 1,331 0.3% (33,530 -8.5% 909 0.2% -------- ------ -------- ------ -------- ------ 7 PRE-TAX INCOME 269,157 59.6% 178,055 45.2% 190,229 51.7% ======== ====== ======== ====== ======== ======
---------------------------------------------------------------------------- Years Ended November 30 1993 ---------------------------------------------------------------------------- 1 REVENUES $383,972 100.0%
2 Operating Expense 182,293 47.5% 3 Depreciation 10,300 2.7% -------- ------ 4 Total Operating Expense 192,593 50.2%
5 OPERATING INCOME 191,379 49.8%
6 Other Income/Expense 2,167 0.6% -------- ------ 7 PRE-TAX INCOME 193,546 50.4% ======== ======
[EDITORS' NOTE: APPENDIX B IS ELECTRONICALLY NON-TRANSFERRABLE.]